ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF TENNESSEE

## EASTERN DIVISION.

*Knoxville,* Sept. Term, 1915.

MRS. ETTA S. EDINGTON *v.* MICHIGAN MUTUAL LIFE
INSURANCE COMPANY.

(*Knoxville.* September Term, 1915.)

1. APPEAL AND ERROR. Review. Decree pro confesso.

In reviewing a judgment entered against defendant *pro confesso*
after its failure to answer, the bill should be construed at
least as favorably as when tested by demurrer or motion to
dismiss; that is, the court should make every reasonable pre-
sumption in favor of the bill, which must be sustained if, upon
critical examination of the facts stated, there is a possibility
that the action may be sustained—it being the policy of the
courts to give every complainant an opportunity to be heard
on the merits when any equity appears in the bill, though
defectively stated. (*Post, pp.* 191, 192.)

Case cited and approved: State v. Standard Oil Co., 120 Tenn.,
86.

2. INSURANCE. Decree pro confesso. Pleading date of incep-
tion.

In suit on a life policy, under a bill alleging that on September
18, 1905, insured applied for the policy, that it was not issued

Edington v. Ins. Co.

before the 22d, and that complainants could not state the exact date, as insured had borrowed on the policy and it was in possession of the insurer, September 22d must be treated as the date of the inception of the insurance. (*Post, pp.* 192-194.)

3. INSURANCE. Life insurance. Lapsing of policy.

Where insured, under a life policy issued September 22, 1905, paid premiums for nine full years in advance, including the year 1913, which carried the policy to noon of September 22, 1914, and such insured died on the early morning of that day, the policy had not lapsed at the time of his death. (*Post, pp.* 194, 195.)

4. EQUITY. Decree pro confesso. Pleading statute.

In suit on a life policy, the bill, pleading a liability of the insurer under Acts 1907, ch. 457, sec. 2, requiring a provision for grace of one month for the payment of premiums after the first year, though alleging only that the policy lapsed, thus giving rise to a new policy to which the statute would apply, after the "passage" of the act, without reference to the date of its taking effect, was sufficient, when taken for confessed. (*Post, pp.* 195, 196.)

5. INSURANCE. Life insurance. Reinstatement. Provision for grace in payment of premiums.

The provision for grace, secured to the insured by Acts 1907, ch. 457, sec. 2, providing that no policy of life insurance shall be issued, unless containing a provision for a grace of one month for the payment of every premium after the first year, became a part of the policy itself upon reinstatement, subsequent to the taking effect of the act, after lapsing for failure to pay premiums. (*Post, p.* 196.)

Cases cited and approved: Laurenzi v. Ins. Co., 131 Tenn., 644; Dugger v. Ins. Co., 95 Tenn., 245.

6. INSURANCE. Failure to pay premium. Effect.

Ordinarily, where a contract of insurance provides that it shall be void if the premiums are not paid when due, or within a

Edington v. Ins. Co.

specified time, default in payment of a premium when due will determine the insurance without any action by the insurer, and the policy cannot be revived without a new contract. (*Post, pp.* 196, 197.)

7.  **EQUITY.  Decree pro confesso.  Propriety.**

Where defendant's answer admits its liability, the court will not set aside the decree rendered *pro confesso* on the bill for the proper amount, even though the allegations of the bill itself are deficient.  (*Post, p.* 197.)        .    .

8.  **EQUITY.  Decree pro confesso.  Pleading.  Penalty.  Statute.**

Under Acts 1901, chapter 141, authorizing recovery of a penalty against an insurance company for delay in paying a loss, and providing that it shall be made to appear to the court or jury that the refusal to pay was not in good faith and inflicted additional expense or loss upon the holder of the policy, and that the penalty, within the prescribed limits, shall, in the discretion of the court or jury, be measured by the additional expense entailed, the bill, in suit on a life policy, alleging that defendant had refused to pay the claim within sixty days after it was due, and after demand, which refusal was not in good faith and had inflicted additional expense upon complainants in an amount equal to not less than twenty-five per cent. of the amount sought to be recovered, was insufficient, the bill being taken *pro confesso*, to authorize recovery for additional loss as a penalty, save for counsel fees.  (*Post, pp.* 197, 198.)        .

Acts cited and construed.  Acts 1901, ch. 141.

FROM HAMILTON.

Error to the Chancry Court of Hamilton County.— W. B. GARVIN, Chancellor.

LITTLETON, LITTLETON & LITTLETON, for plaintiff in error.

W. E. WILKERSON, W. B. MILLER and W. L. FRIERSON, for defendant in error.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This action was brought to recover on a policy of $5,000 on the life of John S. Edington. Copy of bill and process were duly served on the defendant, but, failing to answer within the time allowed by law, an order *pro confesso* was taken, whereby all of the facts stated were, in the usual course, adjudged to have been admitted. Thereupon a decree was entered against the defendant for the full amount of the policy, less a loan of $580. Judgment was also rendered for twenty-five per cent. penalty under Acts 1901, ch. 141. The aggregate balance thus found was $5,525. More than thirty days after the decree was rendered the defendant sought to set it aside, and along with application filed a copy of the policy. The chancellor declined to grant the relief sought, and thereupon the case was brought to this court on writ of error.

The first question to be determined is whether the bill make a case, assuming to be true all the facts therein stated. It is insisted by the defendant that it does not.

What is the rule by which the bill should be construed? It should be at least as favorable as that which

obtains when it is tested by demurrer or motion to dismiss. The rule in this latter class of cases is that the court makes every reasonable presumption in favor of the bill, and if upon critical examination of the facts stated there is a possibility that the action may be sustained the bill must be held good. It is the policy of the courts to give every complainant an opportunity to be heard on the merits of his case, when any equity whatever appears in the bill, although defectively stated. Gibson's Suits in Chancery, secs. '63, 371; *State* v. *Standard Oil Co.,* 120 Tenn. (12 Cates), 86, 108, 110 S. W., 565.

The first point to be determined on the face of the bill is the date of the policy. The following allegations appear on this subject:

"On September 18, 1905, the said John S. Edington signed an application to the defendant, an insurance company, for a policy of life insurance in the amount of $5,000; and on the following day, September 19, 1905, he was examined by a physician employed by defendant as a medical examiner. Said application was signed and said medical examination had in Chattanooga. In due course, both said application and the report of said medical examination were forwarded to defendant's home office in Detroit, Mich.; and, after defendant had examined them and made such investigation as it desired, it issued and forwarded to its agent at Chattanooga the policy applied for. Complainant cannot state the exact date upon which said

policy was issued and forwarded, but it was not earlier than September 22, 1905.

"Complainants are unable to state the date which said policy bears, for the reason that, during his lifetime, said Edington borrowed money, as hereinafter more fully shown, on said policy, and as a consequence it is in the possession of the defendant. The defendant claims that it bears the date of September 17, 1905, which was one day before said Edington signed the application, and two days before his medical examination in Chattanooga. . . .

"Said policy provided that defendant would, from time to time, make advances or loans upon said policy 'for a period ending on the next anniversary of the insurance.' Under this provision, the said Edington had, during his lifetime, borrowed from the defendant $580, which was due and payable, or subject to renewal upon the payment of one year's interest on September 22, 1914. The defendant held said policy as collateral to this loan, and still has the same in its possession, so that complainants cannot produce it. By said policy defendant, in consideration of a premium of $144, insured the life of said Edington for a period of one year, with the right in the insured to have said policy, at the expiration of said one year, converted into a contract of insurance for life by the payment of the sum of $144 on or before twelve o'clock noon on the first anniversary of the date of said policy, and the payment of a like amount on the same date of each succeeding

year during eighteen years, or until the death of said Edington.''

At another place in the bill it is stated that the defendant claimed that the policy was dated on September 17th, and that, the premiums due on that day not having been paid on that day, it had lapsed. It is alleged that this claim constituted a mere subterfuge, whereby the defendant sought to avoid a just obligation.

We think, from these allegation of the bill, the 22d day of September must be treated as the inception of the insurance, and as the anniversary on which the premium was to be paid.

It is alleged that Edington paid premiums for nine full years in advance. This amount included the year 1913, and would carry the policy to noon of September 22, 1914, the day of Edington's death. It is alleged that he died in the early morning of that day; therefore the policy had not lapsed at the time of his death.

There are other allegations in the bill to the effect that, under the terms of the policy, it was not to take effect until the first premium was paid, and that this premium was paid on October 21, 1905, and that, treating this as the inception of the insurance, the policy had until October 21, 1914, to run before it would. lapse. A contention is raised in behalf of the defendant that, although the policy contained the statement mentioned, yet on payment of the first premium the insurance would relate to the date of the policy, and that from that time forward the recurring premium day

would be the date of the policy. We need not consider this special aspect of the matter, because under either date, September 22d or October 21st, there would be no lapse of the policy.

There is another ground of liability stated in the bill, to the effect that after the passage of chapter 457 of the Acts of 1907 the policy lapsed by reason of failure to pay premiums, but was subsequently reinstated on certificate of good health, and on the payment of overdue premiums; that as matter of law this reinstatement after the lapse of the policy was equivalent to the issuance of a new policy, and at once the provisions of the act above referred to became operative as a part of the policy. Section 1 of this act reads :·

"No policy of life insurance shall be issued in this State or be issued by a life insurance company organized under the laws of this State unless the same shall contain the following provisions:

. . . . . .

"(2) A provision for a grace of one month for the payment of every premium after the first year, which may be subject to an interest charged, during which month the insurance shall continue in force, which provision may contain a stipulation that if the insured shall die during the month of grace, the overdue premium will be deducted in any settlement under the policy."

It is insisted in behalf of the defendant that, although the act was passed April 10, 1907, it provided on its face that it was not to go into effect until January 1, 1908, and that the bill alleged only that the lapse oc-

curred after the passage of the act, and made no reference to the date of its going into effect. It is true the bill used the expression "passage of the act;" but it is evident that the purpose was to allege that, after the rule established by the act became operative, the policy lapsed and was reinstated in the manner referred to, because otherwise the allegation would have been an idle one. The construction insisted on by defendant is too strict, under the rule previously stated as to the proper interpretation of bills taken for confessed.

But, aside from this, the policy filed with the answer shows that the lapse occurred in 1912, and the policy provided that in case the premium should not be paid the insurance would become void. The answer also admitted the reinstatement in 1912. Under the law the provision for grace secured by the act mentioned became a part of the policy itself upon the reinstatement. *Laurenzi* v. *Insurance Co.*, 131 Tenn. (4 Thomp.), 644, 665, 176 S. W., 1022; *Dugger* v. *Insurance Co.*, 95 Tenn. (11 Pickle), 245, 261, 32 S. W., 5, 28 L. R. A., 796.

Ordinarily, as stated in Cooley's Briefs on the Law of Insurance, if the contract provides that it shall be void if the premiums are not paid when due, or within a specificed time thereafter, default in the payment of a premium when due will determine the insurance, without any action on the part of the insurer; and when a policy has so become void it cannot be revived without a new contract. Id., vol. 3, pp. 2260 and 2261.

So it fully appears from the answer itself that there was a new contract made and, inasmuch as the provision of the statute above mentioned became immediately incorporated into it, the grace obtained, and there was no forfeiture at the death of the deceased, whether the policy be treated as deing dated September 17th, or September 22d, or the premiums payable on either day.

Thus it appears that even under defendant's answer the liability is admitted, and in such a case the court would in no event set aside the decree rendered on the bill for the proper amount, even though the allegations of the bill were deficient.

This admission in the answer renders it unnecessary for us to consider the question whether the chancellor has the right to set aside the default after the expiration of thirty days, and the various other questions so ably presented in the brief of defendant's counsel, except one of these questions, which we shall now consider.

As already stated, the chancellor rendered a decree for the twenty-five per cent. penalty provided by the act of 1901. The allegation of the bill on this subject was as follows:

"Complainants show that defendant has refused to pay said claim within sixty days after it was due and after demand; that said refusal was not in good faith, and has inflicted additional expense, loss, and injuries upon complainants in an amount equal to not less than

twenty-five per cent. of the amount sought to be recovered herein.''

There is no statement or particularization of the additional expense, loss, and injuries to enable the court to judge of them. The statute provides:

''That it shall be made to appear to the court  or jury trying the case that the refusal to pay said loss was not in good faith, and that such failure to pay inflicted additional expense, loss or injury upon the holder of said policy:  And provided further that said additional liability within the limit prescribed shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss and injury thus entailed.''

We are not in a position to measure this additional expense, loss, and injury, unless the facts are stated to us; otherwise, both the law and fact would be left to the decision of the complainant. The only additional loss or damage inflicted upon the complainant by the alleged bad faith, so far as this record disclosed, consists in the necessity to employ counsel to bring suit. We think $500 would be ample for this purpose.

The result is that the decree of the chancellor will be so modified as to strike out all of the penalty allowed except $500. As thus modified, the decree will be affirmed.

The costs of the court below will be as decreed by the chancellor. The costs of this court will be divided equally between the complainant and the defendant.